Floyd **FORST** and Pearl C. **Forst,**
Appellants,

v.

**SIOUX CITY, Iowa, a Municipal cor-**
**poration, Appellee.**

No. 55760.

Supreme Court of Iowa.

July 3, 1973.

Wilson, Rhinehart & Bikakis, Sioux City, for appellants.

Robert Clem, City Atty., and Michael Walsh, Asst. City Atty., for appellee.

LeGRAND, Justice.

This appeal presents an eminent domain question of first impression. The case was submitted on stipulated facts, and the trial court denied plaintiffs' request that the City of Sioux City (hereafter called city) be compelled to start condemnation proceedings to assess damages to personal property in which they claim an interest and which they say was damaged, destroyed, or reduced in value by condemnation of the real estate upon which it was located. We reverse the trial court.

On September 5, 1969, the city filed its application under the provisions of chapter 472, The Code, for the condemnation of certain real estate to be used in a street widening project. The land was occupied by Thomas J. Coyne and Emma E. Coyne as tenants under a lease with the owners of the property. The Coynes operated a restaurant on the premises and had purchased the fixtures, equipment, supplies, and wares used in the business from plaintiffs on June 28, 1960, under a conditional sales contract for the sum of $20,000.00. The contract was filed for record in the office of the recorder of Woodbury County on August 15, 1961. On the date the city filed its application to condemn, there was an unpaid balance of $13,368.22 on this contract.

The condemnation proceedings resulted in payment of $10,000.00 to Mr. and Mrs. Coyne for their leasehold interest, including—presumably—any damage to the personal property located thereon, as provided in section 472.14, The Code. No notice of the proceedings was served on plaintiffs. It appears they were unaware of the condemnation until it had been completed and the award to Mr. and Mrs. Coyne had been paid. They allege Mr. and Mrs. Coyne left the state without making payment on the outstanding conditional sales contract.

The parties stipulated that the only question submitted to the court for determination is "whether or not the plaintiffs herein were entitled to legal notice of the condemnation proceedings and consideration by the sheriff's jury of their interest in the personal property as condemned."

The rights of the parties to the conditional sales contract are to be determined under our law as it existed prior to the adoption of the Uniform Commercial Code. The contract was entered into on June 28, 1960. The Uniform Commercial Code became effective July 4, 1966. Our conditional sales law (chapter 556, The Code, 1962) was repealed by chapter 413, of the acts of the 61st General Assembly. However, section 554.10101, The Code, contains a provision that "transactions validly entered into before the effective date [July 4, 1966] * * * remained valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this chapter as though such repeal or amendment had not occurred." We are therefore not concerned with the Uniform Commercial Code in this appeal.

We have held mandamus is a proper remedy to compel condemnation when property is appropriated for public use without first exercising the power of eminent domain or when the appropriating agency refuses to make payment for the property taken. Hagenson v. United Telephone Co., 164 N.W.2d 853, 856 (Iowa 1969); Harrison-Pottawattamie Drainage District No. 1 v. State, 261 Iowa 1044, 156 N.W.2d 835, 839 (1968).

We have also held that when real estate is condemned, damage to, destruction of, or reduction in value of personal property located thereon is to be considered in fixing the damages to the owner or tenant. Nidy & Company, Inc. v. State of Iowa, 189 N.W.2d 583, 586 (Iowa 1971). That case contains a discussion of section 472.14 upon which plaintiffs rely here.

In Wilkes v. Iowa State Highway Commission, 172 N.W.2d 790, 794, 795 (Iowa 1969), we said a condemnee was entitled to compensation for damage to, de-

struction of, or reduction in value of personal property even if it is not located on the condemned land as long as it was used in connection with a business operated on that land.

However, we have never faced the precise question posed here. Both the owner of the real estate condemned and the tenant occupying that real estate have been paid the damages they sustained. Neither appeals. The present complaint is by one who is neither owner nor tenant but who claims a security interest in the personal property which was located on the condemned land and who asserts he has been damaged by reason of the condemnation.

Plaintiffs claim they were entitled to notice under the provisions of chapter 472, The Code, specifically sections 472.8 and 472.9. These sections require notice to every person whose land is to be taken or affected and each record lien holder or encumbrancer thereof "and all other persons, companies, or corporations having any interest in or owning any of the * * * real estate". They make no mention of notice to owners or others having an interest in *personal* property.

Another section of the eminent domain statute is important. It is section 472.14, to which we have already referred. It provides in part: "In assessing the damages the *owner* or *tenant* will sustain, the commissioners shall consider and make allowance for personal property which is damaged or destroyed or reduced in value." (Emphasis added.)

Plaintiffs insist they were entitled to notice under these statutory provisions. The trial court found otherwise and denied the petition for writ of mandamus.

Not only is this a case of first impression in this jurisdiction, but counsel have referred us to no cases from other states dealing with the specific point. Our own research has met with the same lack of success.

We do not believe this case can be resolved solely by applying the provisions of chapter 472, The Code, as the trial court did. There is always the overriding constitutional safeguard of Article I, section 18, Constitution of Iowa, that "private property shall not be taken for public use without just compensation first being made." Plaintiffs claim their property was taken in violation of this constitutional provision.

At the time the condemnation occurred, plaintiffs were the owners of legal title to personal property on the premises. They held title as security for payment of the purchase price under a conditional sales contract which had been recorded and of which the city had at least constructive notice. If this personal property was damaged or destroyed or reduced in value by the condemnation, plaintiffs' security may have been adversely affected. Whether they suffered damage because of this depends upon the proof which they have been denied an opportunity to present. Regardless of what plaintiffs may be able to show here, it is clear there may be cases when the security afforded by a lien on personal property will be completely destroyed or seriously impaired. Such a result would be a taking of private property in the constitutional sense for which compensation must be paid. See Lage v. Pottawattamie County, 232 Iowa 944, 949, 5 N.W.2d 161, 164 (1942). Certainly Mr. and Mrs. Coyne could not have voluntarily sold the property to the city, thereby defeating the plaintiffs' security rights. Neither can those rights be prejudiced without compensation by eminent domain proceedings.

In Wilkes v. Iowa State Highway Commission, supra, we talk about the general philosophy—constitutionally guaranteed—that those whose property is condemned should be made whole. This rule must apply also to plaintiffs, who assert damage to a property interest as a result of the condemnation.

**8**

We do not express any opinion as to whether plaintiffs have suffered damage. We say only that under the circumstances here—where plaintiffs are shown of record to hold legal title to personal property alleged to have been damaged, destroyed, or reduced in value—the constitutional provision already referred to demands they be compensated for any damage sustained. To that end they are entitled to notice of the condemnation proceedings.

It is quite true, as defendant points out and as the trial court found, that chapter 472 makes no provision for compensating plaintiffs under these facts; but the statute cannot nullify the constitutional guarantee. The constitution makes no distinction between real and personal property, even though the implementing statutes do. One whose personal property is damaged, destroyed, or reduced in value is as much hurt as if it had been his real estate which the public agency appropriated. This is a taking for which compensation must be paid.

Our conclusion is based not on the statute but on Article I, section 18 of our constitution. Under the statute (sections 472.3 and 472.9) all those holding liens or encumbrances on the land to be condemned must be named in the application and must be given notice of the proceedings. Bourjaily v. Johnson County, 167 N.W.2d 630, 632, 633 (Iowa 1969).

Due process requires no less as to those holding liens or encumbrances of record on personal property which may be damaged, destroyed or reduced in value by condemnation proceedings against real estate under chapter 472. We realize there is presently no statutory procedure to guide condemnors in assuring plaintiffs—and those similarly situated—due process. However, a notice similar to that required to be served on those holding liens on real estate under sections 472.8 and 472.9, The Code, would undoubtedly meet constitutional demands.

For the reasons stated, we hold the trial court erred in refusing to grant the Writ of Mandamus. The judgment is reversed with instructions that the writ issue as prayed.

Reversed.

All Justices concur except HARRIS, J., who concurs in the result.